IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **TERESA GAIL HIGGINBOTHAM,** )<br>)<br>     **Plaintiff,**     )<br>)<br>v.                                              )<br>)<br>**SODEXO AMERICA, LLC, d/b/a** )<br>**SODEXO USA,**                         )<br>)<br>**Serve:**                                 )<br>     **Corporate Creations**      )<br>     **Network, Inc.**                )<br>     **R/A**                               )<br>     **425 W. Washington Street** )<br>     **Suite 4**                          )<br>     **Suffolk, Virginia 23434-5320** )<br>)<br>)<br>**and**                                      )<br>)<br>**HCA LewisGale Hospital, Inc.,** )<br>)<br>**Serve:**                                 )<br>     **CT Corporation System**  )<br>     **R/A**                               )<br>     **4701 Cox Road, Suite 285** )<br>     **Glen Allen, Virginia 23060** )<br>)<br>     **Defendants.**                    ) | Case No:   7:23cv00065 |

## COMPLAINT

COMES NOW, Plaintiff Teresa Gail Higginbotham (hereinafter, "Ms. Higginbotham" or "Plaintiff"), by counsel, and states as her Complaint against Defendants Sodexo America, LLC, d/b/a Sodexo USA ("Sodexo") and HCA LewisGale Hospital, Inc. ("HCA") (hereinafter, collectively, "Defendants"), the following:

1

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA"), the Family and Medical Leave Act ("FMLA"), as codified under Title 29 U.S.C. §§ 2601 *et seq.*, and the Age Discrimination in Employment Act, as codified under 29 U.S.C. §§ 621 through 634 ("ADEA"). *See generally* 28 U.S.C. §1343(a)(4).

2. Venue is appropriate as the acts and/or omissions of Defendants from which the causes of action arise, occurred in and around Montgomery County, Virginia, all within the Western District of Virginia, and thus the matter is suitable for the Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

3. Due to their contacts within the Commonwealth of Virginia, Defendants avail themselves to the jurisdiction of this Court.

4. As it relates to Plaintiff's ADA and ADEA claims, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or around May 2, 2022, against each Defendant. Plaintiff received two Dismissals and Notices of Rights from the EEOC dated November 8, 2022, attached hereto as **EXHIBIT A**. Plaintiff files suit within ninety (90) days of receipt of the Dismissals and Notices of Rights.

## II. THE PARTIES

5. Ms. Higginbotham was a long-time employee of Defendant HCA who became a joint employee of both Defendants before her termination from employment when she was fifty-nine (59) years of age. Ms. Higginbotham is domiciled in Montgomery County, Virginia.

2

6. Defendant HCA LewisGale Hospital, Inc.'s principal office is located in Nashville, Tennessee. Defendant HCA LewisGale Hospital, Inc. owns and operates — in part — a hospital located in Montgomery County, Virginia at which Ms. Higginbotham worked.

7. Sodexo America, LLC, d/b/a Sodexo USA, was formed in Delaware, has a principal office located in Gaithersburg, Maryland, and employs many individuals within the Commonwealth of Virginia including at the HCA hospital in Montgomery County, Virginia.

### III. FACTUAL ALLEGATIONS

**A. The Parties: A Joint Employment Relationship**

8. Teresa Gail Higginbotham began working for HCA in 1989 — over 30 years ago.

9. Ms. Higginbotham became jointly employed by Sodexo around 2013 or 2014. This was contemporaneous with the execution of a contract between Defendants in which Defendant HCA contracted with Defendant Sodexo to provide food services. Ms. Higginbotham was jointly employed by these two entities at all times pertinent to this Complaint.

10. Defendants shared numerous duties, responsibilities, and assets related to the management of Ms. Higginbotham. These entities worked hand-in-hand with a true blend of personnel from both entities to accomplish a singular goal: management and operation of food services. The joint-nature and blend of responsibilities extended to many facets of the corporate relationship that included, but was not limited to, the following:

    a. authority to hire and fire employees;

      b. day-to-day supervision of employees;

      c. physical space and assets owned by Defendant HCA, operated, and used pursuant to agreement by Defendant Sodexo;

      d. shared possession and responsibility over employment records;

      e. joint employee training and personnel documentation; and,

      f. joint human resources functions.

11. In the employment law realm, Defendants were joint employers of Ms. Higginbotham. Regarding the laws and principles of agency, at all times pertinent to this action, Defendant Sodexo operated as an agent of Defendant HCA and Defendant HCA is liable for the acts and/or omissions of Defendant Sodexo via the doctrine of *respondeat superior*.

### B. A Longtime Employee in Need of Normal Medical Care Associated with Aging and Age-Related Disabilities Terminated Despite Excellent Performance

12. Throughout her years of employment with Defendants, Ms. Higginbotham was an extremely loyal employee. Prior to her unlawful termination of employment on or about August 11, 2021, Ms. Higginbotham's work performance was always excellent, and consistently met or exceeded Defendants' expectations.

13. At all times, Ms. Higginbotham was a team player and was praised for her ability to work well with others for many years. Throughout all times pertinent, Ms. Higginbotham consistently spoke to her colleagues politely and respectfully thanked them and praised them for their hard work.

14. In January of 2021, Ms. Higginbotham spoke with Darla Mehrkens, Sodexo General Manager, about Ms. Higginbotham's need to take medical leave for a needed knee replacement surgery in the fall of 2021.

4

15. Ms. Higginbotham's knee affected daily life activities such as walking, standing, and ambulating. At all times, Defendants perceived this condition as a disability.

16. Ms. Mehrkens informed Ms. Higginbotham that she (Ms. Mehrkens) and some other staff members were planning a vacation and had already made reservations, and "nothing or no one was going to stop [them] from taking this vacation."

17. Beginning in January of 2021, Defendants possessed actual knowledge that Plaintiff possessed health issues and would require medical treatment with associated medical leave.

18. Ms. Higginbotham was then informed by her insurance company that she needed to lose weight before having knee replacement surgery. Ms. Higginbotham informed her supervisor that she intended to lose weight and have the surgery in late 2021.

19. Defendants knew that Ms. Higginbotham's medical leave was inevitable. Due to the fact that Ms. Higginbotham required clearance to receive a surgical operation, Defendants initiated a plan to eliminate Ms. Higginbotham and replace her with a younger worker prior to her termination. The plan was not supported by any evidence of poor work performance and was only initiated to eliminate an aging employee that required age and disability-related health care including medical leave.

20. However, prior to this event occurring, Defendants acted.

21. Ms. Higginbotham was told on or about August 11, 2021, that she was no longer needed as an employee of either Defendant. Ms. Higginbotham was informed that (1) she had failed to set up a catering event in July 2021; (2) she made an inappropriate

5

comment during a phone call; (3) her customer skills were not good; and (4) she wouldn't work with employee's schedules.

### C. Defendants' Allegations of Ms. Higginbotham's Work Performance are False and Simply Disproven

22. Prior to August of 2021, Ms. Higginbotham had never been reprimanded nor disciplined for any of these reasons. And in fact, in over 30 years of employment, Ms. Higginbotham had never received a single disciplinary action or "write-up" of any kind whatsoever.

23. Furthermore, Ms. Higginbotham was stunned because all of this occurred close in time to when Defendants knew that she would be pursuing medical leave.

24. None of the allegations regarding Ms. Higginbotham's work performance were true, Defendants possessed no facts or evidence to support the claims, and all could be easily disproven. For example:

   a. With regard to the catering event, Ms. Higginbotham filled out the appropriate form for the event and printed it for the supervisor and performed all work as directed. However, this supervisor was new at the workplace and forgot about the event leading to a larger problem. However, despite the supervisor's forgetfulness, because of Ms. Higginbotham's planning and organization, the supervisor was able to set up the event with appropriate staff in minutes and the event went off without a hitch. For Defendants to consider Ms. Higginbotham at fault for any event or incident in this process is a fraudulent misrepresentation of fact. Additionally, **this event occurred over a year prior to Ms. Higginbotham's termination**.

    b. Ms. Higginbotham never spoke in a rude, offensive, or overly negative way at work. In fact, she spoke with the same custom, style, and practice as all of her co-workers. She never received discipline for speaking to anyone in any negative way. In fact, after the alleged phone call in question, both the COO and Ms. Mehrkens directed and advised Ms. Higginbotham "not to worry about it." At all times, Defendants could have chosen to provide any number of disciplinary actions if any incident had indeed warranted any such reciprocity. At no time did Defendants discipline Ms. Higginbotham.

    c. With regard to customer service, Ms. Higginbotham was always helpful to customers and was never coached on customer satisfaction or provided any criticism, constructive or otherwise, regarding customer service skills. Ms. Higginbotham regularly received annual work performance evaluations that weighed such metrics as customer service skills. Ms. Higginbotham had never received a negative review during her employment.

    d. And, finally, with regard to her employees' schedules, Ms. Higginbotham routinely granted leave requests on a first come, first serve basis. Ms. Higginbotham never "picked favorites," and instead, she treated all co-workers equally and always worked with reasonable flexibility to accommodate the schedules of her co-workers. Ms. Higginbotham never informed anyone at the workplace that they should not take time off. Again, Ms. Higginbotham was never disciplined for any issue related to co-workers' schedules.

25. The directive to terminate the employment of Ms. Higginbotham came from Defendant HCA CEO Alan Fabian and is emblematic of the blended working relationship

between the parties. CEO Fabian highlighted issues in a letter to Defendant Sodexo that both Defendants had worked hand-in-hand together to generate as pretextual reasons underlying a wrongful termination. The letter was merely a piece of paper trail concocted to conceal the true motivations for terminating Ms. Higginbotham.

26.  Defendant Sodexo blamed Ms. Higginbotham's termination on the direction of Defendant HCA as way to "wash its hands" of any liability related to the decision when in fact, the decision was orchestrated by both entities.

27.  On information and belief, Ms. Higginbotham was replaced by a younger individual or individuals who provide the same services for Defendants.

28.  Defendants targeted Ms. Higginbotham and discriminated against her and terminated her employment because of her age, gender, disabilities, and her intended use of FMLA leave.

29.  Defendants anticipated the need to accommodate Ms. Higginbotham in the future and otherwise discriminated and retaliated against Ms. Higginbotham, a qualified individual with a disability, or a qualified individual perceived to have a disability, pursuant to the Americans with Disabilities Act.

30.  Defendants have engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Higginbotham. Due to the acts and omissions of Defendants, Ms. Higginbotham has suffered discrimination and retaliation.

31.  At the time of her unlawful termination from employment, Ms. Higginbotham was protected from age and disability discrimination and retaliation by the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 *et seq.*, the Americans with Disabilities Act, as codified under Title 42 U.S.C.

§§ 12101 *et seq.*, and the ADA Amendments Act of 2008. Ms. Higginbotham was also protected from retaliation and interference pursuant to the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601 *et seq.* Upon information and belief, Defendants unlawfully discriminated and retaliated against Ms. Higginbotham because of her age, disability, need for FMLA leave and interfered with her rights pursuant to the FMLA all in violation of the ADEA, the ADA, and the FMLA.

### COUNT I: CLAIM FOR DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ADA AGAINST BOTH DEFENDANTS

32. Ms. Higginbotham incorporates herein by reference the preceding paragraphs of this Complaint.

33. At all times relevant to this Complaint, Ms. Higginbotham was a qualified individual with a disability, pursuant to the ADA.

34. Specifically, and at all times relevant, Ms. Higginbotham suffered from a disability that impaired several of Ms. Higginbotham's daily life activities and/or functions.

35. In the alternative, Ms. Higginbotham was regarded by Defendants as having such impairments.

36. At all times relevant, however, Ms. Higginbotham could perform the essential functions of her job.

37. At the time of her termination, Ms. Higginbotham was performing her work at a satisfactory level and meeting or exceeding the legitimate business expectations of Defendants.

38. Ms. Higginbotham revealed her disability to her supervisors and both Defendants were aware of her health condition.

39. Defendants discriminated and retaliated against Ms. Higginbotham by treating her differently, and less favorably than, similarly situated employees — ultimately resulting in Ms. Higginbotham's unlawful termination from employment.

40. Defendants would not have terminated Ms. Higginbotham's employment, nor taken the other discriminatory and retaliatory actions against her, but for Ms. Higginbotham's disability.

41. Any reasons given by Defendants for the treatment of Ms. Higginbotham were pretextual, as Ms. Higginbotham's work performance was excellent.

42. Ms. Higginbotham's termination from employment occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon her disability and/or requests for accommodations.

43. As a direct and proximate result of Defendants' actions, Ms. Higginbotham has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

44. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Higginbotham so as to support an award of punitive damages.

45. The above-described acts by Defendants and employees of Defendants constitute disability discrimination and retaliation in violation of the Americans with Disabilities Act, as codified under Title 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADA").

## COUNT II: INTERFERENCE WITH FMLA RIGHTS
## AGAINST BOTH DEFENDANTS

46. Ms. Higginbotham incorporates by reference herein the preceding paragraphs of this Complaint.

47. Defendants are: (1) engaged in commerce and/or in an industry affecting commerce; and (2) employers of fifty (50) or more employees for each working day during each of twenty (20) calendar workweeks in the current or preceding calendar year.

48. Ms. Higginbotham worked for Defendants for more than 1,250 hours during the twelve (12) month period immediately preceding her termination.

49. Ms. Higginbotham properly notified Defendants of her serious health condition(s) and her need for FMLA-qualifying leave, to which he was entitled.

50. Defendants interfered with Ms. Higginbotham's use of FMLA leave by treating her differently, and less favorably than, similarly situated employees not intending to exercise FMLA rights, resulting in Ms. Higginbotham's termination from employment and impeding Ms. Higginbotham's exercise of her FMLA rights.

51. Defendants' interference with Ms. Higginbotham's FMLA rights prejudiced Ms. Higginbotham in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Defendants' violation.

52. As a direct and proximate result of Defendants' actions, Ms. Higginbotham has suffered and will continue to suffer pecuniary loss.

53. At all times material hereto, Defendants engaged in unlawful or discriminatory practices with malice or reckless indifference to the federally protected rights of Ms. Higginbotham so as to support an award of liquidated damages.

54. The above-described acts by Defendants and employees of Defendants constitute unlawful interference with Ms. Higginbotham's rights in violation of the Family and Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601 *et seq*. ("FMLA").

**COUNT III: DISCRIMINATION PURSUANT TO THE ADEA AGAINST BOTH DEFENDANTS**

55. Ms. Higginbotham incorporates by reference herein the preceding paragraphs of this Complaint.

56. At the time of her termination from employment from Defendants, Ms. Higginbotham was within the protected age class and protected from age discrimination.

57. Prior to Ms. Higginbotham's termination from employment, Ms. Higginbotham was performing her work at a satisfactory level, and meeting the legitimate business expectations of Defendants.

58. During her employment with Defendants, Ms. Higginbotham experienced unwelcome discrimination based upon her age.

59. Specifically, Ms. Higginbotham's supervisor subjected her to discrimination by treating her differently, and less preferably, than younger employees, resulting in Ms. Higginbotham's termination from employment and replacement by younger employee(s).

60. Defendants would not have terminated Ms. Higginbotham nor taken the other discriminatory actions against her, but for Ms. Higginbotham's age.

61. At all times material hereto, Defendants engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Ms. Higginbotham, so as to support an award of liquidated damages.

62. The above-described acts by Defendants and employees of Defendants constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

WHEREFORE, Plaintiff Teresa Gail Higginbotham prays for judgment against Defendants Sodexo America, LLC, d/b/a Sodexo USA and HCA LewisGale Hospital, Inc., and for injunctive relief, equitable relief, back pay, front pay, compensatory, liquidated and/or punitive damages, together with prejudgment interest from the date of Ms. Higginbotham's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED ON ALL MATTERS WHICH MAY BE DEMANDED INCLUDING WHETHER THS CASE IS SUBJECT TO A BINDING ARBITRATION AGREEMENT.

Respectfully Submitted,

**TERESA GAIL HIGGINBOTHAM**

By: /s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB # 75488)
Brittany M. Haddox, Esq. (VSB # 86416)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA  24018
Tel:  540-283-0802
brittany@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com

winston@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*